**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

      Plaintiff,

vs.

MICHAEL KORS (USA), INC.,

      Defendant

---

## COMPLAINT

---

COMES NOW Plaintiff Juan Carlos Gil, by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Michael Kors (USA), Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

### <u>INTRODUCTORY STATEMENT</u>

1.     Plaintiff Juan Carlos Gil brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Michael Kors (USA), Inc.'s websites www.michaelkors.com (which is an extension of its high end boutique stores) throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land since 1992.

2.      Title III of the ADA has been judged to apply to websites. Specifically, the Honorable Bryan F. Foster held on March 3, 2016 that the ADA applied to websites where the plaintiff had demonstrated "he was denied full and equal enjoyment of the goods, services, privileges, and accommodations offered by defendant [via its website] because of his disability."[1]

3.      Businesses can make choices (unlike visually impaired individuals) and can either make their Websites inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

4.      When the operators of a website do not take steps necessary to notice people of their website's limitations or to provide programming that works (interfaces) with universal screens readers[2], they are not only marginalizing the visually-impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, ie: second-class citizens.

5.      This case arises out of the fact that Defendant Michael Kors (USA), Inc. has operated its business in a manner and way that completely excludes individuals who are visually impaired from enjoying and accessing Defendant's website www.michaelkors.com.

6.      Defendant Michael Kors (USA), Inc. (also referenced as "Defendant") owns and operates places of public accommodation which are upscale designer boutique stores under the brand name "Michael Kors." Michael Kors boutique stores offer for sale

---

[1] *Davis v. Bmi/Bnd Travelware,* 2016 Cal. Super. LEXIS 217 (2016).

[2] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

to the public Prêt-à-Porter mens and womens fashion clothing, handbags[3], accessories[4] fragrances, sunglass, jewelry, and shoes, which is heretofore, referenced as "Michael Kors brand merchandise."

7.      Defendant offers a website [www.michaelkors.com](www.michaelkors.com) ("Website") which is directly connected to its Michael Kors stores. The Website provides a site locator to Defendant's Michael Kors boutique stores.  Thus Defendant's Website has a true nexus to Defendant's Michael Kors boutique stores.

8.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices, to include measures necessary to ensure compliance with federal law, to include monitoring of such measures, and to update and remove accessibility barriers and obstructions to effective communications on and with Defendant's website so that Plaintiff Gomez (and other individuals who are visually impaired) can access and communicate with Defendant effectively and timely.

9.      This complaint also seeks compensatory damages to compensate Plaintiff Gil for having been subjected to unlawful discrimination and trespass by Defendant as a result thereof.

## JURISDICTION & VENUE

10.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

---

[3] including luggage, wallets, purses, clutches, and backpacks
[4] Such as smart phone cases, key fobs, etc.

11.     This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

12.      State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

13.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting, business within the within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, several Michael Kors boutique stores are located in the district (Aventura, Bal Harbor, and Pembroke Pines).

14.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

### THE PARTIES

**Juan Carlos Gil**

15.     Plaintiff Juan Carlos Gil (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

16.     Plaintiff Juan Carlos Gil is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Juan Carlos Gil suffers optic nerve damage; as such, he is legally blind. Further, Juan Carlos Gil suffers from cerebral palsy, is unable to walk and is confined to a wheelchair.  Therefore, Juan

4

Carlos Gil is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

17.     Plaintiff Gil cannot use the computer without the assistance of screen reader software.

**Michael Kors (USA), Inc.**

18.     Defendant Michael Kors (USA), Inc. (also referenced as Defendant). Defendant is the owner and operator of the www.michaelkors.com Website.

19.     Michael Kors (USA), Inc. is a subsidiary of Michael Kors Holdings Limited, which is a publically traded company on the NADSAQ.  The parent company owns and operates a chain of boutique retail stores under the brand name "Michael Kors." There are over five hundred fifty Michael Kors stores around the world and over 1,500 shop-in-shop boutiques in luxury department stores worldwide [5].

20.     Through its various subsidiaries, Michael Kors Holdings Limited designs, manufacturers, markets, advertises and distributes Michael Kors brand merchandise as well as offers Michael Kors brand merchandise for direct retail through Michael Kors boutiques and Defendant's Website.

## FACTS

21.     Plaintiff Gil's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

22.     Plaintiff Gil frequently utilizes the internet. Due to the fact that he is legally blind, in order to effectively communicate and comprehend information available

---

[5] As of 2015

on the internet and access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

23.     At all times material hereto, Defendant Michael Kors (USA), Inc. was (and is) an organization owning and operating which owns and operates a chain of boutique stores under the brand name "Michael Kors," Each Michael Kors boutique store is open to the public as a retail store. As the owner, operator of retail stores, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant Michael Kors (USA), Inc. is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

24.     By virtue of being a retail store open to the public, each Michael Kors boutique store is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E) and 28 C.F.R. Part 36. Defendant's Michael Kors boutique stores are also referenced throughout as "Place(s) of Public Accommodation," or "Michael Kors stores."

25.     The Defendant controls, maintains, and/or operates an adjunct website called www.michaelkors.com. One of the functions of Defendant's Website is to provide the public information on the various locations of Defendant's Michael Kors boutiques throughout the United States and within the state of Florida.

26.     Defendant's Website also services Michael Kors stores by providing information on the Michael Kors brand merchandise which is sold in Michael Kors boutiques and shop-in-shop boutiques within high end specialty and department stores which sell Michael Kors brand merchandise.

27.     Since the Website allows the public the ability to locate Michael Kors boutique locations, the Website is an extension of the physical Michael Kors boutiques. By this nexus, the website is characterized as a Place of Public Accommodation; 42 U.S.C. § 12181(7)( E) and an extension of Defendant's business.

28.     Most importantly, Defendant's Website is a public store that is on-line, where the public can view and purchase Michael Kors brand merchandise.

29.     The Website is itself a sales establishment, which is a Place of Public Accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the Website must comply with all requirements of the ADA.

30.     This means the website must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

31.     At all times material hereto, Defendant Michael Kors (USA), Inc. was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as a retail store and is a Place of Public Accommodation, Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[6]

---

[6] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

32.     Plaintiff Juan Carlos Gil is a customer who is interested in purchasing high quality fashion forward clothing and leather goods such as Michael Kors brand merchandise which is offered through the Defendant's Michael Kors stores (particularly as offered in the Michael Kors Aventura location which is close to his home), and which is offered through Defendant's Website.

33.     The opportunity to shop for high quality fashionable Michael Kors brand merchandise from his home is an important accommodation for Plaintiff Gil, because traveling outside the home as a blind individual is a difficult and frightening experience. Defendants have not provided their business information in any other digital format that is accessible for use by the blind and visually impaired individuals.

34.     Like most of us, Plaintiff Juan Carlos Gil accesses several websites at a time to compare merchandise and prices. When shopping online, Plaintiff Gil may look at several dozen websites to compare features, styles, and prices.

35.     During the month of October 2016, Plaintiff Gil attempted on several occasions to utilize Defendant's Website to browse through the Michael Kors brand merchandise to educate himself as to the men's clothing and leather goods available on-line with the intent of making a purchase.

36.     The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

37.     The Website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: the lack of alt-text on graphics,

inaccessible forms, the lack of adequate prompting and labeling; the denial of keyboard access; and the requirement that transactions be performed solely with a mouse.

38.     The Website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms to purchase Michael Kors brand merchandise for the purposes of purchasing merchandise from that Website.

39.     The Plaintiff attempted to locate an ***Accessibility Notice***[7] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the business. However, he was unable to do so because no such link or notice was provided.

40.     The fact that Plaintiff Gil could not communicate with (or within) the Website left him feeling excluded, as he is unable to participate in the online shopping experience as provided at the www.michaelkors.com website as experienced by the public.

41.     Plaintiff Andres Gomez continues to desire to patronize the Website, but is unable to do so, as he is unable to effectively communicate with Defendant.  Thus, the Plaintiff and others with vision impairments will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

42.     Because of the nexus between Defendant's Michael Kors boutique stores and Defendant's Website and the fact that the Website clearly requires input from

---

[7] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

Defendant's Michael Kors boutique stores for its operation and use, the Website is a Place of Public Accommodation subject to requirements of the ADA.

43.     On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of the Website by individuals with disabilities.

44.     On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of the Website by individuals with disabilities.

45.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the Website by individuals with disabilities.

46.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the Website by individuals with disabilities.

47.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of the Website by individuals with disabilities.

48.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

49.      On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

50.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

51.     On information and belief, Defendant has not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the www.michaelkors.com website, Applications, and Digital Assets accessible to the visually impaired community.

52.     On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[8].

53.     On information and belief, Defendant does not have a Web Accessibility Policy.

54.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Website to visually impaired individuals who want the safety and privacy of purchasing Michael Kors brand merchandise offered on Defendant's Website online from their homes.

55.     Further, Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities

56.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American

---

[8] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

civic and economic life. That mandate extends to internet shopping websites, such as the www.michaelkors.com website.[9]

57.     On information and belief, the Defendant is aware of its common access barriers to effective communication within its Website which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

58.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

59.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

60.     According to Statistic Brain Research Institute[10], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as www.michaelkors.com and  have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

61.     According to the National Federation for the Blind[11], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

---

[9] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[10] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/
[11] Statistics for 2012, see http://www.NFB.org/blindness-statistics

62.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

63.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

64.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Trespass Violations**

65.     Plaintiff Juan Carlos Gil utilizes his personal computer to access websites such as the Defendant's www.michaelkors.com website. Plaintiff Gil uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff Gil stores his personal information and retains his browsing history on his personal computer.

66.     Throughout the Website, the Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

67.     The Defendant informs the Website user that the user's personal information and browsing history is collected is used for direct marketing, targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his/her personal information conveyed to third parties for direct marketing purposes. According to the

Defendant's Website, those third parties include (but may not be limited to): (i) the Defendant's related affiliated companies (without so naming those other companies, (ii) web analytics services, such as Google Analytics and Adobe services and Adobe Marketing Cloud Device Co-op, (iii) service providers and advertising companies (without naming those parties), and   (iv) to law enforcement officials (if so required to be transmitted by said law enforcement.

68.    The Plaintiff was unable to comprehend Defendant's Website; therefore, Plaintiff has/had no choice (and therefore no knowledge) of the Defendant's installation of software and collection of the website user's browsing history and analytics placed on the user's computer.

69.    Based upon the review of Defendant's Website, it is clear that, when a user accesses Defendant's Website, the Defendant installs software onto the user's computer.  It is clear that the Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history[12].

70.    As such, through its Website, Defendant has committed a trespass against the Plaintiff since the Website places software on the Plaintiff's personal computer without Plaintiff's consent.

**COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

71.    Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-64 above.

72.    The Department of Justice ("Department") has long taken the position that

---

[12] As delineated in the "Cookies" section of the Defendant's Website

both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[13].

**The Website As A Place of Public Accommodation**

73.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[14]. The Department is engaged in rulemaking to consider whether specific requirements or technical standards for website accessibility should be developed, but this does not undermine or change public accommodations' longstanding existing obligation to ensure equal access to their goods and services, including those offered via a website, for individuals with disabilities[15]; see Statement of

---

[13] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

[14] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

[15] Pursuant to its statutory authority to promulgate regulations to implement Title III of the ADA, on July 26, 2010, the Department issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, announcing the Department's

Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

74.    Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.michaelkors.com website, as defined within §12181(7)(E), and are subject to the ADA.

75.    Pursuant to 42 U.S.C. §12181(7)(E), www.michaelkors.com is a *Place of Public Accommodation* under the ADA because it provides the general public with the ability to purchase Michael Kors brand merchandise online and have those purchased items delivered to one's home. Further, the Website also serves to augment Defendant's Michael Kors stores by providing the public information on the various locations of Michael Kors stores and to educate the public as to the line of Michael Kors brand merchandise sold on the Website, sold in Michael Kors stores, and available via independent retailers (such as shop-in-shops located in fine department stores).

76.    It is clear that the ADA applies to the Defendant's Website, as the website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick

---

interest in developing more specific requirements or technical standards for website accessibility. 75 Fed. Reg. 43,460 (July 26, 2010). In the ANPRM, the Department reaffirmed its longstanding position that the ADA applies to websites of public accommodations, and reiterated, consistent with the preamble to the 1991 regulations, that the ADA regulations should be interpreted to keep pace with developing technologies. *Id.* at 43,464 ("The Department has also repeatedly affirmed the application of Title III to Web sites of public accommodations."). The Department recognized, however, that in light of inconsistent court decisions on website-related obligations and differing technical standards for determining web accessibility, further guidance was warranted. *Id.* The development of the Department's web regulation is ongoing.

and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

77.     While the Eleventh Circuit has not yet ruled on whether a website is a place of public accommodation under the ADA, case law in other districts have provided favorable rulings. For example, in *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196, 199 (D. Mass. 2012)[16].

78.     In looking at the plain language of the statute, the district court noted the ADA covered the services ***"of"*** a public accommodation and not services ***"in"*** a public accommodation. *Id.*   See citation of 42 U.S.C. § 12182(a): "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations ***of*** any place of public accommodation. . ."; *Nat'l Fed'n of the Blind v. Target Corp*., 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006). Further ruling: "The statute applies to the services ***of*** a place of public accommodation, not services ***in*** a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on a physical location, the premises of a public accommodation would contradict the plain language of the statute." *Id.* (emphasis added).

---

[16] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

79.     This linguistic distinction is crucial, because under Netflix's reading of the ADA[17], many businesses that provided services to a customer's home (such as plumbers, pizza delivery services, or moving companies) would be exempt from the ADA. *Id.* Due to this linguistic distinction, in *Netflix*, the court rationalized that while the home itself is not a place of public accommodation, entities that provided services in the home through the internet, such as Netflix, could qualify as places of public accommodation.

80.     The court found similarly in *Nat'l Fedn. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567 (D. Vt. 2015)[18] as the court rejected Scribd's arguments that Congress's use of the phrase "***place*** of public accommodation" and the doctrine of *ejusdem generis* show that a public accommodation is defined exclusively as a physical space. *Id.* at 572. The court noted 42 U.S.C. § 12181(7) is entitled, "Public Accommodation" and not "Places of Public Accommodation," and refers to private entities as "public accommodations" and not "places of public accommodation." *Id.* (emphasis added).

81.     As such, the ADA's failure to refer to public accommodations as "places" of public accommodation in the above referenced instances suggested to the court that accommodations protected by the statute "must be available to the public, ***but not necessarily at a physical place open to the public***." *Id.*

82.     Web-based services did not exist when the ADA was passed in 1990 (therefore could not have been explicitly included in the Act). However, the ADA's legislative history makes clear Congress intended the ADA to adapt to changes in

---

[17] In its Motion for Judgment on the Pleadings (which was denied)

[18] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . *should keep pace with the rapidly changing technology of the times.*" *Netflix,* 869 F. Supp. 2d at 200 (citing H.R. Rep. 101-485(II), at 108 (1990)); *Scribd,* 97 F. Supp. 3d at 574 (same) (emphasis added). For example, Congress identified "information exchange" - the principal function of a website - as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

83.    The legislative history of the definition of "public accommodation" shows that Congress wanted the list of 12 exemplars enumerated in 42 U.S.C. § 12181(7) to be "construed liberally" in harmony with the ADA's broad purpose. *Netflix,* 869 F. Supp. 2d at 200 (citing S. Rep. No. 116, at 59 (1990) (("[W]ithin each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase 'other similar' entities. *The Committee intends that the 'other similar' terminology should be construed liberally* consistent with the intent of the legislation that people with disabilities should have equal access to the array of establishments that are available to others who do not currently have disabilities."). *Scribd,* 97 F. Supp. 3d at 572-73 (same) (emphasis added).

84.    Congressional intent was that the defining characteristic of public accommodations be that **they offer goods or services to the public**, **not that they offer goods or services to the public at a physical location**. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(III), at 54 (1990)).

85.     The defining characteristic is that the entity provide a service or a good, which would then enable that entity to fall into one of the general *categories* of entities enumerated by 42 USC §12181(7). *Id.* (citing S. Rep. 101-116, at 54 (1990)).

86.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

87.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

88.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

89.     As such, the www.michaelkors.com website must be in compliance with the ADA.  However, the Website is not in compliance with the ADA.  Plaintiff Juan Carlos Gil has suffered an injury in fact because of the Website's (and Defendant's) non-compliance with the ADA.

**Barriers to Access**

90.     As a result of the inaccessibility of Defendant's Website individuals with disabilities who are visually impaired are denied full and equal enjoyment of the information and services that Defendant has made available to the public on the Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

91.     Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

92.     A sampling review of just part *of the* Defendant's Website revealed that the website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

   1)  The language of the document is not identified,
   2)  Image alternative text is not present, and
   3)  A form control does not have a corresponding label.

93.     Further, the Defendant's Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

   1)  Alternative text is likely insufficient or contains extraneous information,

2)   An event handler is present that may not be accessible,
3)   A heading level is skipped,
4)   Flash content is present,
5)   Adjacent links go to the same URL,
6)   A link contains no text, and
7)   Alternative text is likely insufficient or contains extraneous information.

94.      More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

95.      Further, the Website does not offer include the universal symbol for the disabled[19] which would permit disabled individuals to access the Website's accessibility information and accessibility facts.

96.      There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include (but not limited to) adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

97.      The Defendant has violated the ADA (and continues to violate the ADA) by denying access o its Website to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within Defendant's www.michaelkors.com website are ongoing.

---

[19]  , or HTML "Accessibility" link for those individuals who are visually impaired

**Requirement for Effective Communication**

98.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

99.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems".  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

100.    Section   28   C.F.R.   §36.303(c)   specifically   states   that   public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

101.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

102.    Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

103.    The Department has consistently told courts, members of Congress, and businesses that Title III applies to websites and services provided over the Internet. Addressing the 106th Congress, the Department stated: "It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services[20]." The Department believes that Title III reaches the Websites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations; 75 Fed. Reg. 43460-01 (July 6, 2010).

104.    In rendering its opinion in *Scribd,* the court referenced the Department's opinion and stated: "Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet[21]" *Scribd,* 97 F. Supp. 3d at 574.

**Violations of the ADA**

105.    As a result of the inadequate development and administration of the www.michaelkors.com website, Plaintiff Juan Carlos Gil is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

106.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

a)   Require Defendant Michael Kors (USA), Inc. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.michaelkors.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal

---

[20] 106th Congress, 2d Sess. 65-010 (2000)
[21] citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996)

enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendant Michael Kors (USA), Inc. to take the necessary steps to make the Website  readily accessible to and usable by visually impaired users, and during that time period prior to the www.michaelkors.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant Michael Kors (USA), Inc. to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Michael Kors boutiques (locations) and becoming informed of and purchasing Michael Kors brand merchandise online, and during that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate,  to provide an alternative method for individuals with visual impairments to effectively communicate for such goods and services made available to the general public through Defendant's Website.

107.    Plaintiff Juan Carlos Gil has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff Juan Carlos Gil is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Michael Kors (USA), Inc.

## COUNT II – TRESPASS

108.    Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–70 above.

109.    Plaintiff Gil's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's www.michaelkors.com website.   Plaintiff Gil's personal information has suffered a trespass due to the employment of software analytics by Defendant which are present on Defendant's Website, which the Plaintiff has navigated.

110.    Plaintiff Gomez was unaware that Defendant's Website was placing software on his computer due to his inability to effectively communicate with of the Website.

111.    Plaintiff Gil did not consent to the placement of software on his personal computer; therefore Defendant has committed a trespass against Plaintiff.

112.    By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

113.    Defendant's installation, operation, and execution of software on Plaintiff's computer has impaired the condition and value of the Plaintiff's computer.

114.    At     the     Defendant's     Website     location     of www.michaelkors.com/browse/common/staticContent.jsp?slotId=2200002,     Defendant states the following:

## Information Collection

**Information you provide to us:**

"We (or our service providers) collect information from you when you: (1) purchase products from us, whether on a Site, through a catalog or in one of our stores; (2) create an account with us, or otherwise sign up for a service or feature; (3) complete a survey, or submit a product rating or review; (4) participate in a sweepstakes, contest or other promotion; (5) communicate with us via third-party social media sites; (6) apply for a job with us; or (7) contact us, or otherwise communicate with us or provide information to us. The "personal information" we collect may include, for example, your name, postal address, zip or postal code, email address, telephone number, date of birth, payment information, demographic information, details on items purchased, and other information you choose to provide to us.

In some cases, you may provide information to us about another person, such as when you purchase a gift card for someone and request that we deliver it to that person, when you share Site content or send a message to a friend through a Site or otherwise, or when you decide to ship products you purchase to someone else. In such cases, you represent that you have the authorization of such person to provide us with such information.

We may combine the information we collect online from or about you with the information we collect offline from or about you. We may also combine your (and others') information that we've collected from you (or others) with information we may receive from other sources, such as third-party social media platforms (e.g., when you choose to log in to our Site through a third-party social media platform, subject to your actions and settings thereon), address update services or co-promotion partners. By accessing a Site, you signify your consent to the above collection of your personal information."

115.     As delineated in the preceding paragraph, Defendant has committed a trespass by collecting information on Plaintiff's computer.

116.     As a direct and proximate result of this, the Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, the Defendant has injured and impaired on the condition and value of the Plaintiff's computer as follows:

a)      By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)      By infringing on Plaintiff's right to exclude others from his computer;

c)      By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

d)      By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)      By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

117.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Michael Kors (USA), Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Michael Kors (USA), Inc. has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant Michael Kors (USA), Inc. to update its www.michaelkors.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant Michael Kors (USA), Inc. to clearly display the universal disabled logo[22] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.michaelkors.com website;

d) The Court enter an order requiring Defendant Michael Kors (USA), Inc. to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e) The Court enter an Order directing Defendant Michael Kors (USA), Inc. to create policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to its Website;

f) The Court enter an Order directing Defendant Michael Kors (USA), Inc. to establish a policy of web accessibility and accessibility features for its Website to insure effective communication for individuals who are visually impaired;

g) The Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the

---

22 

Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

h) The Court to award injunctive and equitable relief as applicable, including:

    i.    prohibiting Defendant from engaging in the acts alleged above;

    ii.    requiring Defendant to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendant's placement of software on their computer(s); and

    iii.    requiring Defendant to provide Plaintiff reasonable means to decline participation in Defendant's placement of software on his computer;

i) The Court award damages in an amount to be determined at trial;

j) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; pre- and post-judgment interest to the extent allowable; and other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from engaging in the conduct and practices complained of herein;; and

k) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 20th day of January, 2017

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_